A01A2372, A01A2373. OVREVIK v. OVREVIK et al. (two cases).

(564 SE2d 8)

SMITH, Presiding Judge.

This complex and often acrimonious litigation, involving a revocable inter vivos trust hand-drafted by one of the settlors, appears before us for the third time. *Ovrevik v. Ovrevik*, 242 Ga. App. 95 (527 SE2d 586) (2000) ("*Ovrevik I*"), the first appeal, gives a full account of the underlying facts. In that case, we reviewed the trial court's grant of partial summary judgment with respect to distribution of certain trust property to the settlors' children. We affirmed most of the trial court's decisions regarding the intent expressed in the trust docu-

ments but remanded two specific issues for further consideration, finding that the trust language was ambiguous and parol evidence was required to explain the ambiguities and determine the intent of the settlors in those two instances only. Id. at 99-100 (4), (5). After an evidentiary hearing, the trial court entered a judgment resolving the issues as directed by this court. The trial court's resolution of those issues returns to us for review on separate appeals by two of the children, Alice M. Ovrevik and Glenn S. Ovrevik.[1] Finding no error in the trial court's determinations, we affirm in both appeals.

The trial court first considered the settlors' intended distribution of a parcel of land in Douglas County. As noted in *Ovrevik I*, supra, the trust agreement directed that the Douglas County property be distributed to Russell Ovrevik subject to a lien in favor of Alice Ovrevik. It provided that if the property was not sold within four years of the death of the last surviving settlor, the lien was to be paid off and that "[w]hen the lien is paid off[,] the remaining value of the property shall be divided either physically or if sold in dollar values among Russell's three children and Russell as determined by Russell." (Emphasis omitted.) Id. at 99 (4). We found this language ambiguous

> with regard to the intended distribution to Russell and/or his children after the lien is paid off. On the one hand, the phrase "as determined by Russell" may give him the discretion to decide whether some or all of his children receive a share of the property. On the other hand, it may give Russell the discretion to decide whether the property is divided physically or sold. Or, it may give him the discretion to decide both the beneficiaries and the form of distribution. Since we cannot determine the Settlors' intent on this matter, we cannot determine whether the trial court's order conformed to that intent. Therefore, we vacate that portion of the trial court's order directing distribution of the Douglas County property to Russell Ovrevik and his three children. The case is remanded for the trial court to hear parol evidence to explain the ambiguity and determine the Settlors' intended distribution, after the lien is paid off, to Russell Ovrevik and/or his children. OCGA § 53-12-27.

Id. at 99-100. The trial court explicitly considered the alternatives stated by this court pursuant to OCGA § 9-11-60 (h), and it concluded that the settlors intended the phrase at issue to mean "that Russell

---

[1] Premature appeals by the same parties previously were dismissed.

Ovrevik had the discretion to decide both the beneficiaries and the form of the distribution of the Douglas County property."

The trial court next considered the settlors' intention regarding the payment of any debts incurred by the trust, as expressed in a provision that Glenn Ovrevik should have "joint responsibility with his sister Alice Ovrevik for the equal adjustment of one half each of any surplus or shortage of funds in the final closing of the trust." (Punctuation omitted.) *Ovrevik I,* supra at 100 (5). An otherwise identical provision placed joint responsibility upon Alice Ovrevik. In *Ovrevik I,* we noted that the trial court's original interpretation, while possible, had the im- permissible effect of distributing the trust's debt to beneficiaries of the trust. Id. at 100 (5). We noted an alternative interpretation that "in light of the Settlors' great effort to address distribution of the Trust property in the event of a shortage of Trust funds, the provisions could also be read to mean that Glenn's and Alice's shares of Trust property should be abated in the payment of debt in the unlikely event of a debt," id., and remanded for the trial court to resolve the ambiguity. The trial court found the evidence on this issue "scant," but concluded on the basis of the testimony of the parties that the settlors indeed had intended the interpretation proposed in *Ovrevik I,* that "Glenn's and Alice's shares of Trust property should be abated in the payment of debt."

1. We must first address the standard of review appropriate to this appeal, as appellants contend that the standard for review of a summary judgment should be applied. We disagree. As we noted in *Ovrevik I,* OCGA § 53-12-27 provides that the trial court may hear parol evidence to explain any ambiguities in the language of an express trust. *Ovrevik I,* supra at 100 (4). The use of parol evidence to explain an ambiguity presents a question for the trier of fact. *Sharple v. AirTouch Cellular,* 250 Ga. App. 216, 218 (551 SE2d 87) (2001). Summary judgment therefore became inappropriate once this court found ambiguities that could be resolved only by parol evidence and the intervention of a finder of fact.

Moreover, at the beginning of the evidentiary hearing convened to resolve the two issues remanded by this court, the trial court made plain to all the parties that it was not treating the hearing as one concerning summary judgment. The court declined to consider a late-filed summary judgment motion by appellant Glenn Ovrevik, noting that "a motion for summary judgement [sic] is not the kind of motion that will delay a trial, which is what this is, on the very same issues." The court also told the litigants, "[T]his is our trial on these issues, and that's exactly what I noticed . . . in the order that I entered." In addition, the trial court specified in its "Final Order" the intention "that the foregoing pronouncements, findings of fact and conclusions of law constitute the FINAL ORDER OF JUDGMENT in this civil

action, and should be construed as such by the Court of Appeals if an appeal is taken from this order." Finally, before testimony began, Alice Ovrevik's counsel explicitly waived her "demand for a jury trial as to contested issues of fact." We therefore apply the standard of review applicable to a bench trial:

> [T]he appellate standard of review for nonjury trials of disputed material facts is the clearly erroneous test, also known as the "any evidence" rule. As such, the sole question for determination on appeal is whether there is any evidence to authorize the trial court's judgment. It is our duty to construe the evidence to uphold the judgment rather than upsetting it. This is true regardless of whether evidence also existed that may have supported [appellants'] position. In the absence of legal error, an appellate court is without jurisdiction to interfere with a judgment supported by some evidence.

(Citations, punctuation and emphasis omitted.) *Progressive Preferred Ins. Co. v. Aguilera*, 243 Ga. App. 442, 445-446 (2) (533 SE2d 448) (2000). Applying this standard to the trial court's judgment, we consider appellants' contentions.

### Case No. A01A2372

2. In three enumerations of error, Alice Ovrevik asserts that the trial court erred in interpreting the trust agreement to provide that the shares of trust property allocated to her and to Glenn Ovrevik should be abated in the payment of any trust debt. She contends that she renounced this provision of the trust documents, that the trial court erred in finding that Russell Ovrevik's share of the trust property should not be abated by any debt of the trust, and that the trial court erred in failing to reinterpret the intention of the settlors in light of the debts that have been incurred by the trust.

(a) We do not reach Alice Ovrevik's claim of renunciation. We remanded this case for the sole and limited purpose of interpreting two specified provisions of the trust agreement to resolve ambiguities of language concerning the settlors' intent. Our earlier decision constitutes the "law of the case" with respect to this litigation. OCGA § 9-11-60 (h).

> The "law of the case" rule, though formally abolished, still applies to rulings by one of our appellate courts in a particular case; such rulings are binding in all subsequent proceedings in the same matter, including a second trial. An exception to this rule exists where the evidentiary posture of the

case changes after remand by the appellate court. The evidentiary posture may change when a new issue not previously addressed by an appellate court is properly raised, or when the original evidence is insufficient but is later supplemented.

(Citations omitted.) *Lowman v. Advanced Drainage Systems*, 228 Ga. App. 182, 183-184 (491 SE2d 427) (1997). Here, no new evidence of renunciation was presented at the evidentiary hearing on remand.

(b) Alice Ovrevik also contends the trial court erred in failing to consider the effect of an accounting for the trust that was filed after the hearing and entry of the trial court's order appealed here. But the law of the case rule applies, and the accounting does not change the evidentiary posture of this appeal. At the time of the hearing, testimony was presented to the trial court that expenses chargeable to the trust had already exceeded the cash on hand. As we noted in *Ovrevik I*, the trust documents anticipated the possibility of a shortage in trust funds and provided for adjustments accordingly. Id. at 100 (5). The later filing of an official accounting does not change the evidentiary posture with respect to the interpretation of the language in this trust provision.

(c) Finally, Alice Ovrevik contends the trial court erred in its interpretation of this trust provision to make her shares of trust property and those of Glenn Ovrevik abatable in the payment of outstanding debt. She contends that the entire record demonstrates that the settlors did not intend to favor Russell Ovrevik over her and Glenn Ovrevik. But we do not reweigh the evidence or judge the credibility of witnesses; we simply consider whether any evidence authorizes the trial court's judgment.

Here, some evidence was presented supporting the trial court's decision. The language of the trust agreement itself establishes that the settlors intended to give a substantially smaller "inheritance distribution percentage" to Russell Ovrevik. Russell Ovrevik also testified that he received a smaller share of the trust property. And Glenn Ovrevik testified that his parents "wanted to keep Russell out of the administration of the trust. So they allotted administrative duties that would result in this closeout to just two people, not to Russell." While Glenn Ovrevik's responses to further questioning by the trial court regarding the meaning of this portion of the trust agreement were ambiguous and somewhat evasive, the trial court was authorized to conclude that the settlors' intention was to limit the abatement of any shortage of trust funds (or the distribution of any surplus) to the shares of the two siblings who received the bulk of the estate and were responsible for administrative duties.

3. In her remaining enumeration of error, Alice Ovrevik complains that the trial court erred in interpreting the provision of the trust concerning the Douglas County property, contending that the settlors did not intend for Russell Ovrevik to receive a fee simple title to the Douglas County property. Instead, she proposes that she, Glenn Ovrevik, and Russell Ovrevik were each entitled to a per stirpes share of the Douglas County property. But these arguments have no bearing on the issue that we remanded to the trial court for consideration: to resolve the ambiguity in the trust language providing for the distribution of the Douglas County property as between Russell Ovrevik and his three children. *Ovrevik I*, supra at 100 (5). Moreover, Alice Ovrevik did not raise this issue on the first appeal of this case.

Some evidence was introduced to support the judgment. The trial court explicitly stated that it found the testimony of Russell Ovrevik regarding the settlors' intent to be "the most credible, most logical, and most reasonable evidence presented on the issue of the distribution of the Douglas County property." The property was described in the trust documents as "old farm land." Russell Ovrevik testified that the land could be used as a farm and that he and his father had discussed improvements for farming purposes. He also testified that his father had engaged in farming, that he and his wife had "always" been involved in farming and were farming when his father was alive, and that his own children were not interested in farming. When his father was alive, Russell Ovrevik had expressed to him an interest in buying the Douglas County property, and his father stated "that he would think about us later on that." Russell Ovrevik testified that his relationship with his children was "excellent," arguing that this justified his parents in reposing trust in him to divide the property fairly with his children. He also testified that his father understood the rigors of farming.

Based upon these facts, Russell Ovrevik concluded that his father intended to give him the flexibility to decide whether he would sell the property or farm it, if he was still able to do so after his retirement, and also to decide whether his children would receive a share of the property or the proceeds of its sale. While Glenn Ovrevik presented countervailing evidence that his parents had been estranged from Russell Ovrevik and testified to his personal belief that his parents intended for Russell Ovrevik to take nothing whatever under the trust unless he reconciled with them, the trial court weighed the evidence and found Russell Ovrevik's testimony more believable. Since some evidence supports the trial court's conclusion, we will not disturb it.

*Case No. A01A2373*

Glenn Ovrevik, appearing pro se, also appeals from the trial court's judgment. His brief is far from a model of clarity and cites very little legal authority for the propositions he sets forth. But to the extent we are able to discern the basis of his assertions of error, we address them as follows.

4. In two enumerations of error, Glenn Ovrevik complains that the trial court improperly conformed its decision to the parameters given in *Ovrevik I*. It appears that Glenn Ovrevik wishes to reopen the entire trust document to reinterpretation by parol evidence, in order to put forward his contention that the settlors intended to disinherit Russell Ovrevik and have him receive nothing under the trust if he failed to reconcile with them. But this court has already determined the meaning and effect of most of the trust provisions. *Ovrevik I* remanded only two limited issues for consideration, and the trial court's analysis was correctly guided by Georgia law and the direction provided by this court.

> OCGA § 5-6-10 provides that after remittitur of an appealed case is returned to the trial court, the decision and direction of the appellate court shall be respected and carried into full effect in good faith by the court below. Where a judgment is reversed and the case is remanded to the trial court with direction, it is the duty of the trial court in good faith to carry into full effect the mandate of this court. The rulings of our appellate courts are binding on the trial court in all subsequent proceedings in the case.

(Citations and punctuation omitted.) *Gold Kist v. Wilson*, 247 Ga. App. 107, 111 (542 SE2d 126) (2000) (case reversed for second time when trial court exceeded its authority on remand and failed to carry out mandate of this court). To the extent Glenn Ovrevik may be arguing in these two enumerations of error that the evidentiary posture of the case changed on remand, that argument is addressed in Division 2, above.

5. Four enumerations of error appear to present variations on Glenn Ovrevik's contention that the trial court misinterpreted the evidence presented at the hearing with regard to the Douglas County property. Essentially, Glenn Ovrevik argues that the trial court's interpretation of the trust documents and the evidence presented at the hearing is erroneous and that the trial court did not give proper weight to his contention that the settlors intended to disinherit Russell Ovrevik. But, as noted in Division 1, above, Glenn Ovrevik proposes an incorrect standard of review for this court. We do not weigh

the evidence or judge the credibility of witnesses, but examine the record to determine if *any* evidence supports the trial court's decision. While Glenn Ovrevik points to evidence in support of his contentions, some evidence supported the trial court's decision regarding the distribution of the Douglas County property, and we will not disturb it. See Division 3, above.

6. In his remaining argument, contained primarily within two enumerations of error, Glenn Ovrevik complains that the trial court erred in its determination of the allocation of outstanding debts of the trust. This contention is without merit, for the reasons stated in Division 2, above.

In the context of the limited remand of this matter for construction of two provisions of the trust, and applying the "any evidence" rule on review, we find no error in the trial court's decision. This case has generated extreme animosity among the family members involved, as well as some $50,000 in fees charged to the trust at the time of the hearing almost a year ago. A comment made over a century ago by Chief Justice Bleckley concerning another protracted and bitter lawsuit seems appropriate: "Thrice this unquiet case has materialized at the sittings of this tribunal. We hope its perturbed spirit will now enter into unbroken rest." *Phillips v. City of Atlanta*, 87 Ga. 62, 63 (13 SE 201) (1891).

*Judgments affirmed. Barnes and Phipps, JJ., concur.*

DECIDED MARCH 8, 2002 —
RECONSIDERATION DENIED APRIL 8, 2002.

*Ballard & Ballard, Charles T. Ballard*, for appellant (case no. A01A2372).

Glenn S. Ovrevik, *pro se* (case no. A01A2373).
*Mark D. Oldenburg, Douglas B. Warner*, for appellees.